**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

CHRISTOPHER DUBOSE,           )
                                     )
        Plaintiff,          )
                                     )
vs.                             ) No. 22 -cv-7147
                                   )
FERRARA CANDY CO.,         ) Honorable Lindsay C. Jenkins
                                   )
                                   )
        Defendant.      )

**<u>DEFENDANT FERRARA CANDY CO.'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT</u>**

Kevin M. O'Hagan, ARDC No 6211446
Ryan T. Benson, ARDC No. 6312338
O'HAGAN MEYER LLC
One East Wacker Drive
Suite 3400
Chicago, Illinois 60601
PH: 312.422.6100
FX: 312.422.6110
kohagan@ohaganmeyer.com
rbenson@ohaganmeyer.com

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 1

    A.    Ferrara's Bellwood Plant Background and Relevant Individuals ........................... 1

    B.    Plaintiff's 2019 Conditional Hire as Production Supervisor and Allegations in His Complaint ..................................................................................................... 2

    C.    Differences in Production Manager and Production Supervisor Positions ............. 3

    D.    Ferrara's Metrics for the Production Manager Role ............................................... 4

    E.    Production Manager Candidates and Interviewees ................................................. 5

    F.    Plaintiff's Application for the Production Manager Position and Ferrara's Evaluation of Plaintiff's Resume ............................................................................. 6

    G.    Plaintiff's Failure to Qualify for the Production Manager Role, Communications with Ferrara, and Work History ............................................................................. 7

    H.    Ferrara's Reasoning for Hiring Patrick Grant Into the Production Manager Position ..................................................................................................................... 8

    I.    Plaintiff Was Never Going to Be Hired Into the Position Based on His Resume ....................................................................................................................... 9

STANDARD OF DECISION ........................................................................................... 10

ARGUMENT ..................................................................................................................... 10

    A.    Analysis of a Retaliatory Failure to Hire Claim ..................................... 10

    B.    There is "No Direct Evidence" That But-For Plaintiff Filing Charges of Discrimination He Would Have Been Hired to the Production Manager Position ..................................................................................................... 12

    C.    Plaintiff's Retaliation Claim Also Fails If He Tries to Argue Under the *McDonnell Douglas* Indirect Method of Proof ......................................... 13

i

D.      Plaintiff Cannot Rebut Defendant's Legitimate, Non-Retaliatory Reasons for Failing to Hire Him as Production Manager. ..................................... 17

CONCLUSION .................................................................................................................... 18

## <u>POINTS AND AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    47 U.S. 242 (1986) ..............................................................................................10

*Baines v. Walgreen Co.*,
    863 F.3d 656 (7th Cir.2017) ...............................................................................11

*Bd. of Trustees of S. Ill. Univ. v. Knight*,
    163 Ill. App. 3d 289, 516 N.E.2d 991, 114 Ill. Dec. 836 (5th Dist. 1987) ..........11

*Brill v. Lante Corp.*,
    119 F.3d 1266 (7th Cir. 1997) ............................................................................17

*Broberg v. Ill. State Police*,
    537 F.Supp.2d 960 (N.D. Ill. 2008) ...................................................................12

*Brooks v. Avancez*,
    39 F.4th 424 (7th Cir. 2022) ...............................................................................11

*Clay v. Holy Cross Hosp.*,
    253 F.3d 1000 (7th Cir. 2001) ............................................................................17

*Cowan v. Glenbrook Sec. Serv. Inc.*,
    123 F.3d 438 (7th Cir. 1997) .............................................................................12

*Durkin v. City of Chicago*,
    *341 F.3d 606 (7th Cir. 2003)* ...............................................................................11

*Eaton v. J.H. Findorff & Sons, Inc.*,
    1 F.4th 508 (7th Cir. 2021) ................................................................................10

*Ellis v. Elgin Riverboat Resort*,
    2004 U.S. Dist. LEXIS 18971, at *14 (N.D. Ill. Sep. 21, 2004) ....................14, 16

*Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*,
    860 F.3d 494 (7th Cir. 2017) .............................................................................12

*Gracia v. SigmaTron Int'l, Inc.*,
    842 F.3d 1010 (7th Cir. 2016) ...........................................................................11

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) ...................................14

## POINTS AND AUTHORITIES *(Continued)*

*Hoffberg v. Elliot Auto Supply Co.*,
    No. 21 CV 5063, 2024 U.S. Dist. LEXIS 11668, at *18-19 (N.D. Ill. Jan. 23,
    2024) ........................................................................................................... 11-12

*Jones v. Union Pacific R.R.*,
    302 F.3d 735 (7th Cir. 2002) .................................................................17

*Jordan v. Summers*,
    205 F.3d 337 (7th Cir. 2000) .................................................................17

*Lee v. Nat'l Can Corp.*,
    699 F.2d 932 (7th Cir. 1983) .................................................................14

*Martin v. Wilkie*,
    No. 1:17-cv-00272-JRS-DLP, 2019 U.S. Dist. LEXIS 51474, at *6 (S.D. Ind. Mar.
    27, 2019) ....................................................................................... 11-13

*McDonnell Douglas Corp. v. Green*,
    *411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)* ............................ 11-13, 15

*Millbrook v. IBP, Inc.*,
    280 F.3d 1169 (7th Cir. 2002) ........................................................15, 17

*Ortiz v. Werner Enterprises, Inc.*,
    834 F.3d 760 (7th Cir. 2016) ......................................................... 11-12

*Riley v. UOP LLC*,
    244 F.Supp.2d 928 (N.D. Ill. 2003) .....................................................12

*Robinson v. Perales*,
    894 F.3d 818 (7th Cir. 2018) ........................................................ 10-11

*Russell v. Acme-Evans Co.*,
    51 F.3d 64 (7th Cir. 1995) .................................................................17

*Skiba v. Ill. Cent. R.R.*,
    884 F.3d 708 (7th Cir. 2018) .................................................................11

*Smith v. Hope School*,
    560 F.3d 694 (7th Cir. 2009) .................................................................10

**POINTS AND AUTHORITIES** *(Continued)*

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ...............................................................................................11

*Venters v. City of Delphi*,
    123 F.3d 956 (7th Cir. 1997) ................................................................................12

*Williams v. Hewitt Assocs. LLC*,
    No. 02C3562, 2005 U.S. Dist. LEXIS 7223, at *10 (N.D. Ill. Mar. 31, 2005) ....17

**Rules**

Fed. R. Civ. P. 56(c) ...........................................................................................10

775 ILCS 5/1-101, et seq. .................................................................. 1, 13, 17-18

42 U.S.C. § 2000e ...................................................................... 1, 13-15, 17-18

iii

Defendant, Ferrara Candy Company, by its counsel O'Hagan Meyer, LLC, for its Memorandum of Law in Support of its Motion for Summary Judgment, pursuant to Fed. R. Civ. Pro. 56, states as follows:

## INTRODUCTION

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e and The Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq*. ("IHRA") on the basis of retaliatory failure to hire. Plaintiff cannot present evidence in which a reasonable jury could find that Ferrara Candy Company ("Ferrara" or "Defendant") retaliated against him when he was not hired for a Production Manager role – a position he was clearly unqualified for.

As set forth in detail below, the clear and undisputed evidence shows that Ferrara's decision to not hire Plaintiff as a Production Manager was based solely on legitimate and lawful reasons. He was clearly unfit for the position and there is no evidence of any retaliatory motive. It would be unreasonable for a juror to believe that but-for Plaintiff filing Charges of Discrimination against Ferrara, he would have been hired to the Production Manager position over a current Ferrara employee that had worked at Ferrara for over six years (and has been promoted five times during his tenure with the company) and met all the job criteria.

## FACTUAL BACKGROUND

### A. Ferrara's Bellwood Plant Background and Relevant Individuals.

Ferrara Candy Company is a confections company, and in August 2021 its Bellwood, Illinois plant made fruit snacks, gummy candy, pharmaceutical gummies, and hard candy. (SOF, ¶ 3)[1]. The Bellwood plant is Ferrara's largest U.S. manufacturing facility and has between 600-650 employees. (SOF, ¶ 4). Dennis Kaps started working at Ferrara as a consultant in 2019 and

---

[1] Defendant will refer to its Rule 56.1 Statement of Undisputed Facts by citation "SOF".

became the Director of Talent Acquisition for Ferrara in March 2020. (SOF, ¶ 5). In that role, Mr. Kaps led all recruiting functions for Ferrara. *Id.*

Matthew McClurken was the Plant Manager at the Bellwood plant in August 2021 and made the hiring decision to internally promote a Ferrara employee named Patrick Grant to the Production Manager role (the Production Manager role is also occasionally referred to as Manufacturing Manager). (SOF, ¶ 6). Mr. Grant is currently the Production Manager at the Bellwood plant and is "flourishing" in the position. (SOF, ¶ 7). Mr. Grant has been promoted five times at Ferrara since his start date in June 2015. *Id.* Sheyla Galvez was the Human Resources Manager of the Ferrara Bellwood plant in August 2021. (SOF, ¶ 8). Andrew Oppenheimer was the Assistant General Counsel of Ferrara in August 2021. (SOF, ¶ 9).

**B.      Plaintiff's 2019 Conditional Hire as Production Supervisor and Allegations in His Complaint.**

Plaintiff applied for and was given a conditional offer for a Production Supervisor position on August 28, 2019 at the Bellwood plant. (SOF, ¶ 11). Plaintiff's offer to become a Production Supervisor was rescinded based on Plaintiff's background check coming back with a robbery conviction, and someone else was hired to the position. Plaintiff sued the background check company Career Builder based on the conviction data (which was false information) and filed a Charge of Discrimination against Ferrara. (SOF, ¶ 12). Plaintiff sued the background check company, Career Builder, based on the conviction data (which was false conviction information) and filed a Charge of Discrimination against Ferrara. *Id.*

Plaintiff brings this lawsuit based on not being hired to the Production Manager role he applied for in August 2021 (two years after applying to the Production Supervisor role). (SOF, ¶ 13). Plaintiff's entire Complaint centers on the allegations that a Production Supervisor role and Production Manager role are substantially similar jobs, and therefore he was qualified and should

have been hired as a Production Manager. (SOF, ¶ 14). However, during his deposition, Plaintiff admitted that there are major differences between the Production Supervisor and Production Manager positions, in contradiction to the allegations in his Complaint. (SOF, ¶ 15). Importantly, Plaintiff stated that he does not believe every applicant that is qualified for a Production Supervisor position is also qualified for a Production Manager role, thus further conceding that there are differences in the positions and qualifications in the positions. (SOF, ¶ 16).

Since 2019, Plaintiff has not spoken to any employee of Ferrara. After Plaintiff applied to the Production Manager role, he did not speak to any Ferrara employee. (SOF, ¶ 17). Plaintiff did not know during his deposition which Ferrara employee made the final hiring decision for the Production Manager role he applied for in August of 2021. (SOF, ¶ 18). However, Plaintiff claims not being hired by this unknown individual was retaliatory. *Id.*

### C. Differences in Production Manager and Production Supervisor Positions.

The Production Supervisor role and Production Manager role (which is the role Plaintiff applied for in August 2021 and is at issue in this case) are different roles: the Production Supervisor role is a much lower position within the Bellwood plant compared to the Production Manager role. (SOF, ¶ 20). There are between 30-32 Production Supervisors at the Bellwood plant, compared to only two Production Managers. (SOF, ¶ 21).

The Production Manager oversees all shifts within the facility. (SOF, ¶ 22). The Production Manager oversees the supervisor positions (including the Production Supervisors). *Id.* There is a supervisor for each shift, and within that shift there are different departments. *Id.* The Production Manager oversees all of the supervisors throughout the different departments. *Id.*

Production Supervisors are only responsible for their specific department at the Bellwood plant (sometimes a single machine) and for only one shift of the entire facility, whereas the

Production Manager is in charge of the entire facility, for all shifts, on a 24/7 schedule. (SOF, ¶ 23). Production Supervisors are responsible for overseeing hourly employees and not salaried employees like the Production Manager role. (SOF, ¶ 24). The Production Manager attends all the operations planning meetings with the Plant Manager and external corporate employees from engineering, innovation and technology ("InTech"), and environment, health, safety ("EHS"). (SOF, ¶ 25). Production Supervisors are not privy to those planning meetings, as it is not within their job role. *Id.* A Production Manager is part of the planning for any new product to be produced at a facility, scheduling test runs at the facility, working with EHS to ensure safety compliance, meeting with engineering and InTech to ensure product specifications are aligned with equipment capabilities, and supporting the learning and development training programs. (SOF, ¶ 26). If the Plant Manager is on vacation or unavailable, the Production Manager is in charge of the plant's operations. (SOF, ¶ 27).

Not every individual that is qualified to be a Production Supervisor is qualified to be a Production Manager. (SOF, ¶ 28). The Production Manager role is essentially the number two position in the Bellwood plant. (SOF, ¶ 29). It is like an assistant Plant Manager role. *Id.* In 2021, Bellwood produced more volume of candy than any other Ferrara plant, making the Production Manager role at Bellwood crucial to Ferrara. *Id.*

### D. Ferrara's Metrics for the Production Manager Role.

Ferrara had a "Talent Profile" outlined for the Production Manager role. (SOF, ¶ 30). On August 4, 2021, the Talent Profile was sent to Mr. McClurken (Bellwood's Plant Manager) by Mr. Kaps to discuss what Ferrara was looking for in the Production Manager role. *Id.* The Talent Profile outlined, in part, that Ferrara was looking for operations management from a manufacturing facility with an emphasis on food, consumer packaged goods, or pharmaceuticals. (SOF, ¶ 31).

Other requirements included knowledge of the machines in the factory and someone who could step into the role with minimal training. *Id.* Mr. McClurken agreed with the description of the Talent Profile for the Production Manager role. (SOF, ¶ 32). Mr. McClurken sought someone that had long tenure in their previous job history, that showed advancement in their previous jobs and that could step into the role with minimal training. (SOF, ¶ 33). Unless the applicant had some other extraordinary capabilities, they would not be hired to the Production Manager role without prior food and beverage experience. (SOF, ¶ 34). Ferrara sought someone in the Production Manager role who also could potentially advance to the Plant Manager role (the most senior position at the Bellwood plant). (SOF, ¶ 35). Internal hiring and promoting from within is encouraged at Ferrara. (SOF, ¶ 36).

### E. Production Manager Candidates and Interviewees.

There were approximately 80 applicants for the Production Manager role. (SOF, ¶ 38). Of the 80 applicants, 5 individuals were interviewed: Florron Gause, Patrick Grant, Hector Alvarez, David Young, and Alexander Lewis; Mr. Grant was hired. (SOF, ¶ 39). Hector Alvarez held the role of Production Manager at Good Heart Specialty Meats, a chicken processing plant, since 2018. (SOF, ¶ 40). David Young held the role of Director of Frozen Food Operations for Home Run Inn Frozen Foods. (SOF, ¶ 41). Mr. Young's resume showed management experience at six different food manufacturers. *Id.* However, Mr. McClurken was not thrilled with the short tenure he held with other companies in the previous three years. *Id.* Alexander Lewis was also interviewed, although he was the only applicant whose resume did not show food manufacturing experience, it was suggested that he be interviewed due to holding higher level positions at manufacturing companies (including holding a Plant Manager role). (SOF, ¶ 42). Ultimately, he was not hired due to not having food or beverage experience. *Id.* Mr. McClurken explained in an

email after the interview, "I would pass on this candidate. I believe the roles he held with other small companies has not prepared him for this role. While he has a good background with experience, he has no food manufacturing experience." *Id*. Finally, Ferrara interviewed two internal candidates, Florron Gause and Patrick Grant. (SOF, ¶ 43). Patrick Grant was promoted to the position of Production Manager. *Id.* A majority of applicants for positions like Production Manager at Ferrara never get an interview. (SOF, ¶ 44).

### F. Plaintiff's Application for the Production Manager Position and Ferrara's Evaluation of Plaintiff's Resume

Mr. Dubose applied to the Production Manager position on or about August 30, 2021. (SOF, ¶ 45). Plaintiff did not apply with a cover letter, and the resume Plaintiff used to apply for the Production Manager position was outdated and had false information regarding the last two years and four months of his employment history. (SOF, ¶ 46).

The resume Plaintiff submitted for the Production Manager position in August 2021 stated that he had been working for Schneider Logistics from 2017 to present day. (SOF, ¶ 47). While Plaintiff's resume claimed he was a current employee of Schneider Logistics, in actuality, Plaintiff was terminated from the position in April 2019, and he held two other jobs that he did not list on his resume between April 2019 and August 2021. *Id.*

Dennis Kaps assessed Plaintiff's resume and application to determine if he was qualified for the Production Manager position. (SOF, ¶ 48). Mr. Kaps did not believe Plaintiff should be interviewed because he was not qualified for the role and other applicants were. (SOF, ¶ 49). Mr. Kaps believed that Plaintiff's biggest weakness was that he had no food, beverage, or pharma manufacturing experience, which is critical for the role. *Id.* The only information Mr. Kaps had available regarding Plaintiff's qualifications was based on what was in his resume. *Id.* Mr. Kaps knew that Plaintiff had brought a claim against Ferrara in the past and was wondering if Plaintiff's

6

application should have special handling or special treatment or consideration. (SOF, ¶ 50). Mr. Kaps was wondering if Talent Acquisition should "definitely interview" Plaintiff based on his previous claims brought against Ferrara. *Id*. Mr. Kaps therefore sought Mr. Oppenheimer and Jillian Donato's (Vice President Human Resources - Operations) advice before rejecting Plaintiff for the Production Manager position. (SOF, ¶ 51). Mr. Kaps asked via email how to handle the application because Plaintiff "**does not meet all of our criteria but does meet some of it.**" (SOF, ¶ 52). On August 30, 2021, Mr. Oppenheimer responded via email as follows:

> "Mr. DuBose should be evaluated for this position as if he were any other candidate. He should be evaluated solely on whether he meets the qualifications of his job, and his experience and qualifications against other qualified candidates who are interested in this position. The fact that he filed prior Charges of Discrimination against Ferrara must not play any part in our decision making regarding his candidacy for this position or any other position. Let me know if you have any questions."

(SOF, ¶ 53).

Defendant's application of that advice did not result in Plaintiff being selected for an interview just like other applicants who were underqualified. (SOF, ¶ 54).

> **G.  Plaintiff's Failure to Qualify for the Production Manager Role, Communications with Ferrara, and Work History.**

Ferrara has a pattern and practice of not hiring individuals with false resumes. (SOF ¶ 56). Plaintiff put false employment history for the previous two years and four months on his resume. *Id.* Matt McClurken would not have hired Plaintiff, even if he were otherwise qualified, because Plaintiff lied in his resume regarding the last two years and four months of his employment history. *Id.*

Plaintiff's resume showed that he had no experience in food manufacturing and very little experience in any type of manufacturing. (SOF ¶ 57). The last and only manufacturing experience Plaintiff had was in 1997 when he was an Assistant Manager in the printing press section for the

Chicago Tribune. *Id.* Plaintiff was never an Operations Manager for any manufacturer. (SOF, ¶ 58). Plaintiff also does not have 25 years of management experience in manufacturing as he alleged in his Complaint. (SOF, ¶ 59).

Plaintiff has only worked in manufacturing in one industry, printing. (SOF, ¶ 60). Since 1997, he has had no full-time management experience in manufacturing. *Id.* Plaintiff has never worked as an operations manager overseeing manufacturing at any facility, food-related or otherwise. (SOF, ¶ 61). Plaintiff applied in the past to drink and candy manufacturing companies Pepsi, Coca Cola, Hershey's, Mars, Tootsie Roll and Bloomers. (SOF, ¶ 62). He was not hired by any of these companies. *Id.* Plaintiff simply does not know how to make candy and does not know how Ferrara makes candy. (SOF, ¶ 63).

**H.    Ferrara's Reasoning for Hiring Patrick Grant Into the Production Manager Position.**

Ferrara hired Patrick Grant for the role of Production Manager and he is still in the position today. (SOF, ¶ 64). He has been described as "flourishing" in the position. *Id.* Mr. Grant was a good candidate because he knew about the machines, he clearly had previous candy making experience having worked for Ferrara for over 6 years, he is a good communicator, encourages commitment, promotes teamwork and has been a longstanding exemplary employee. *Id.* He also rolled out the Enterprise Resource Planning ("ERP SAP") platform across Ferrara's entire network leading a major initiative for Ferrara. *Id.*

Ferrara believes Mr. Grant has potential to be a Plant Manager one day and it is Ferrara's intent when hiring Production Managers that they will one day become a Plant Manager. *Id.* Mr. Grant started at the company as a Packing Machine Operator in 2015, he was then promoted to Supply Chain Coordinator in 2016, then Warehouse Supervisor in 2018, then Associate Project

Manager in 2019, then Inventory Supply Manager in early 2021, and finally the Production Manager position in late 2021. (SOF, ¶ 65).

### I. Plaintiff Was Never Going to Be Hired Into the Position Based on His Resume.

The former Bellwood Plant Manager, Matthew McClurken, does not believe he spoke to Talent Acquisition about Plaintiff during the hiring process for the Production Manager position, but if he did, he would have not deemed him qualified for the role. (SOF, ¶ 66). Based on reviewing Mr. Dubose's resume, Mr. McClurken would have decided to not interview Plaintiff. (SOF, ¶ 67). After Mr. McClurken reviewed the resumes of Florron Gause, Alexander Lewis, Dennis Schmidt, Hector Alvarez, and David Young, he believed those individuals were more qualified for the Production Manager role, based in part on them having manufacturing experience in a food or beverage industry or being a plant manager for a manufacturing facility. (SOF, ¶ 68).

Based on Plaintiff's resume, Mr. McClurken believes it would have been a waste of time to interview Plaintiff because Mr. McClurken did not believe Plaintiff could step into the role of Production Manager and immediately contribute. (SOF, ¶ 69). Mr. Dubose's resume looks like someone qualified to run a distribution center, which is much different than the role of Production Manager for a candy manufacturing company. *Id.* Further, Mr. McClurken would not have considered Plaintiff for the role because he lied on his resume for the last two years and four months of his employment history. *Id.*

Importantly, Mr. McClurken hired 8 individuals into the position of Manager at the Bellwood plant (a higher level than a supervisor position). All the managers he hired who worked on the plant floor (Warehouse Manager, Production Manager, Continuous Improvement Managers) had food and beverage experience. The only Managers Mr. McClurken hired who lacked food and beverage experience were in human resource roles and they did not actively work

9

on the plant floor. (SOF, ¶ 70). Mr. McClurken decided to hire Patrick Grant for the role of Production Manager and would hire Patrick Grant over Plaintiff if he had to make the decision today. (SOF, ¶ 71).

Meanwhile, there is no record of anyone being hired to Ferrara in the Production Manager position that did not have food or beverage manufacturing experience. (SOF, ¶ 72).

## STANDARD OF DECISION

A party is entitled to judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986). Once the movant satisfies its burden to show an absence, the nonmoving party "must present affirmative evidence to defeat a properly supported motion" and cannot merely allege the existence of a factual dispute, plaintiff must supply evidence sufficient to allow a jury to render a verdict in its favor. *Id.* at 256-57. While the district court must construe all facts and reasonable inferences in the nonmoving party's favor, it is not required to draw every conceivable inference, but only those that are reasonable. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). Based on this standard, Defendant is entitled to summary judgment.

## ARGUMENT

### A.    Analysis of a Retaliatory Failure to Hire Claim.

In order to make out a claim for retaliation, a plaintiff must demonstrate "(1) that he engaged in statutorily protected activity; (2) that his employer (or prospective employer) took a materially adverse action against him; and (3) there is a but-for causal connection between the two." *Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 511-12 (7th Cir. 2021); citing *Robinson v.*

*Perales*, 894 F.3d 818, 830 (7th Cir. 2018); *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 718 (7th Cir. 2018) (citing *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir.2017)); *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016)[2]. The causation standard is more stringent for a retaliation claim than for a discrimination claim. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "To prove causation, the plaintiff must show that the desire to retaliate was the but-for cause of the challenged employment action." *Gracia*, 842 F.3d at 1019 (quoting *University of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)).

"A plaintiff cannot survive summary judgment merely by raising a dispute as to the accuracy of the reasoning behind an adverse employment action—there must be evidence from which a jury could conclude that the employer acted with an illegal discriminatory motive." *Hoffberg v. Elliot Auto Supply Co.*, No. 21 CV 5063, 2024 U.S. Dist. LEXIS 11668, at *18-19 (N.D. Ill. Jan. 23, 2024); citing *Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022) ("Because courts are not super-personnel departments who sit in judgment of management decisions, it is of no moment if the employer's reasoning is incorrect, 'foolish, trivial or even baseless.'") (citation omitted)).

A plaintiff can establish a *prima facie* case of retaliation under what was traditionally referred to as either the direct or indirect method. *Hoffberg*, 2024 U.S. Dist. LEXIS 11668, at *26 (citing *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003)). *Ortiz* abrogated the distinction between direct proof and indirect proof but did not "displace the burden-shifting analysis established in *McDonnell Douglas*," which courts had formerly referred to as the "indirect" method of proof." *Martin v. Wilkie*, No. 1:17-cv-00272-JRS-DLP, 2019 U.S. Dist.

---

[2] Claims under the Illinois Human Rights Act are analyzed under the same standards as Title VII claims. See *Bd. of Trustees of S. Ill. Univ. v. Knight*, 163 Ill. App. 3d 289, 294, 516 N.E.2d 991, 114 Ill. Dec. 836 (5th Dist. 1987).

LEXIS 51474, at *6 (S.D. Ind. Mar. 27, 2019); citing *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017). "Post-*Ortiz*, it's clear that the *McDonnell Douglas* framework is just a "means to consider whether one fact (here, protected activity) caused another (here, failure to hire)." *Martin,* 2019 U.S. Dist. LEXIS 51474, at *6 (S.D. Ind. Mar. 27, 2019); citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 761 (7th Cir. 2016).

**B.      There is "No Direct Evidence" That But-For Plaintiff Filing Charges of Discrimination He Would Have Been Hired to the Production Manager Position.**

Although the ultimate question remains whether a reasonable trier of fact could conclude Defendant retaliated against Plaintiff (*Hoffberg*, 2024 U.S. Dist. LEXIS 11668, at *26), it is helpful to evaluate whether there is any "direct" evidence on the record. That is particularly true given the strict but-for requirement of Plaintiff's *prima facie* claim. Based on the traditional analysis, direct evidence is "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Riley v. UOP LLC*, 244 F.Supp.2d 928, 936 (N.D. Ill. 2003) (citing *Cowan v. Glenbrook Sec. Serv. Inc.*, 123 F.3d 438, 443 (7th Cir. 1997)). "A plaintiff using the direct method must set forth actual evidence of discrimination." *Broberg v. Ill. State Police*, 537 F.Supp.2d 960, 966 (N.D. Ill. 2008). Evidence qualifies as "direct" evidence when it "in and of itself suggests that the person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criterion . . . ." *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). To establish direct evidence of discriminatory intent, it "essentially requires an admission by the decision maker that his actions were based on the prohibited animus," and such admissions are "rarely found." *Riley*, 244 F.Supp.2d at 936 (internal citations omitted).

Here, no such admissions of retaliatory motive exists. Plaintiff can present no direct evidence from which a rational trier of fact could reasonably determine that Defendant failed to hire him for the Production Manager role based on Plaintiff having filed a Charge of Discrimination against Ferrara. Aside from the bald accusations within the Complaint itself, nothing in any record shows that Plaintiff's prior Charges of Discrimination and participation in the administrative process played any role in Ferrara not offering Plaintiff an interview and/or hiring him for the vacant Production Manager role at the Bellwood plant. To the contrary, in response to Mr. Kaps' inquiry on how to handle Plaintiff's application for the Production Manager role, Mr. Oppenheimer explicitly stated that Plaintiff "should be evaluated for this position as if here any other candidate. He should be evaluated solely on whether he meets the qualifications of the job, and his experience and qualifications against other candidates who are interested in this position. **The fact that he filed prior Charges of Discrimination against Ferrara must not play any part in our decision making regarding his candidacy for this position or any other position**." (SOF, ¶ 53) (emphasis added). Accordingly, there is no "direct evidence" to support Plaintiff's Title VII and IHRA retaliation claims.

### C. Plaintiff's Retaliation Claim Also Fails If He Tries to Argue Under the *McDonnell Douglas* Indirect Method of Proof.

Plaintiff's retaliation claims similarly fail under the indirect method of proof. Under *McDonnell Douglas* indirect method, a plaintiff may establish a prima facie case of retaliatory failure to hire by showing (1) that he is an individual that engaged in protected activity; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. *Martin*, 2019 U.S. Dist. LEXIS 51474, at *7 (S.D. Ind. Mar. 27, 2019); referencing *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), holding modified by
*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).

Here, it is not disputed that Plaintiff engaged in protective activity and he was not hired to
the Production Manager role. However, it is disputed that Plaintiff was qualified for the job
(element two) and Defendant sought applicants from persons with his qualifications after he was
rejected (element four). Plaintiff cannot meet element two because he was unqualified for the job.
Plaintiff's argument on this element turns on his allegation that the Production Manager and
Production Supervisor roles are essentially the same. The undisputed facts show that the
Production Manager and Production Supervisor roles are vastly different, with the Production
Manager role essentially being the number two position at the Bellwood plant. (SOF, ¶¶ 20-29).
Indeed, the Talent Profile for the Production Manager role provided that Ferrara sought an
applicant with operations management experience from a manufacturing facility with an emphasis
on food, consumer packaged goods, or pharmaceuticals, in addition to knowledge of the machines
in the factory, and one who could step into the role with minimal training. (SOF, ¶ 31). Mr. Kaps
– Director of Talent Acquisition at Ferrara – stated in his deposition that unless the applicant had
some other extraordinary capabilities, the applicant would not be hired to the Production Manager
role without prior food and beverage experience. (SOF, ¶¶ 5, 34). While Plaintiff may have been
qualified for the Production Supervisor role, the undisputed facts show he was not qualified for
the Production Manager role. This alone defeats Plaintiff's *prima facie* case given that there is no
onus on Ferrara to hire or interview an unqualified candidate. *See Ellis v. Elgin Riverboat Resort*,
2004 U.S. Dist. LEXIS 18971, at *14 (N.D. Ill. Sep. 21, 2004); citing *Lee v. Nat'l Can Corp.*, 699
F.2d 932, 936-37 (7th Cir. 1983) ("Title VII does not compel employers to hire unqualified
applicants with questionable employment histories. The Supreme Court described the policy

14

underpinnings of Title VII in *McDonnell Douglas Corp. v. Green*, noting that 'the broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions.'").

Not only did Plaintiff lack experience in food manufacturing, he had very little experience with *any type* of manufacturing. (SOF, ¶ 60). The only time Plaintiff gained manufacturing experience was between 1992-1997 when he was an assistant manager for the Chicago Tribune's printing press. (SOF, ¶¶ 57, 60). Plaintiff has had no full-time management experience in manufacturing in the past twenty-seven years (since 1997). (SOF, ¶ 60). Indeed, Plaintiff has never held the job of being an operations manager at *any* manufacturing facility and, much less a food and beverage manufacturing facility. (SOF, ¶ 61). Plaintiff applied to other drink and candy manufacturing companies Pepsi, Coca Cola, Hershey's, Mars, Tootsie Roll and Bloomers in the past – none of them hired him. (SOF, ¶ 62). Plaintiff also egregiously lied on his resume by putting a false employment history for the prior two years and four months of his employment. (SOF, ¶¶ 46). Ferrara has a pattern and practice of not hiring individuals with false resumes and Mr. McClurken would not have hired him based on that alone. *Id.* As Mr. McClurken put it, even interviewing Plaintiff would have been a "waste of time". (SOF, ¶ 69). Accordingly, Plaintiff cannot meet element two under the indirect method of proof.

Moreover, Plaintiff cannot meet element four under the indirect method because the other applicants Ferrara interviewed were *more* qualified than Plaintiff. Whether or not Plaintiff believed he was qualified enough to receive an interview over the other candidates is speculative and does not create a material issue of fact. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (holding that "plaintiff's contention that he is the better candidate for a vacancy constitutes nothing but the employee's own opinion . . . ."). Interviewee Hector Alvarez, who was

15

not hired, had held a Production Manager role at a chicken processing plant – meaning that, unlike Plaintiff, Mr. Alvarez had both food experience and direct experience in the job role Ferrara was trying to fill. (SOF, ¶ 40). Interviewee David Young was a Director of Frozen Food Operations at Home Run Inn Frozen Foods, and his resume had shown management experience at *six* different food manufacturers, compared to Plaintiff who had no experience in food manufacturing. (SOF, ¶¶ 41, 61). Mr. Young was not hired. (SOF, ¶ 41). Interviewee Alexander Lewis was not hired on the basis that, while he was a Plant Manager at a manufacturing company (a higher role than the Production Manager position), he, like Plaintiff, did not have any food or beverage experience – which was essential for the position. (SOF, ¶ 42). Ultimately, Patrick Grant, who was hired internally into the Production Manager role, possessed the requirements for the position that the other interviewees (who were already *more qualified* than Plaintiff) lacked. Mr. Grant had six years of candy making experience at Ferrara, he knew how the machines operated such that he could step into the role with minimal training, he is a good communicator, encourages commitment, promotes teamwork and has been a longstanding and exemplary employee for Ferrara. (SOF, ¶ 64).

The overwhelming evidence shows Plaintiff cannot overcome the heavy burden of showing that retaliation was the but-for (rather than contributory) cause of Defendant's decision not to hire him. He was unqualified, other more qualified candidates that met more of the Talent Profile metrics than Plaintiff did not get hired, and Ferrara deemed Mr. Grant the right candidate for the job based on his qualifications, excellent performance history at the company and long tenure at Ferrara. Our courts have held that "where there is no evidence that the best candidate did not receive the job, a court will not assume wrongful conduct by the employer." *Ellis*, 2004 U.S. Dist. LEXIS 18971, at *21. Plaintiff has presented no evidence to carry his burden of proving that

Ferrara's reasoning for not interviewing him and ultimately hiring him as Production Manager "was false *and* that the actual reason was discriminatory" based on filing of prior Charges of Discrimination against Ferrara. *Jones v. Union Pacific R.R.*, 302 F.3d 735, 742 (7th Cir. 2002). Accordingly, Plaintiff fails to establish the fourth element of his *prima facie* claim of retaliatory failure to hire under Title VII and the IHRA.

**D.  Plaintiff Cannot Rebut Defendant's Legitimate, Non-Retaliatory Reasons for Failing to Hire Him as Production Manager.**

Even if Plaintiff could overcome the strict but-for-relation burden of proof in the indirect method, which he cannot, he cannot satisfy his next burden of showing that Defendant's reason for failing to hire him was pretextual.  Plaintiff lacks any evidence showing that Defendant's legitimate, non-retaliatory reasons for hiring him for the Production Manager role was a lie. *See Williams v. Hewitt Assocs. LLC*, No. 02C3562, 2005 U.S. Dist. LEXIS 7223, at *10 (N.D. Ill. Mar. 31, 2005) (internal quotations omitted).  "Pretext 'means a lie, specifically a phony reason for some action.'" *Millbrook*, 280 F.3d at 1175; citing *Russell v. Acme-Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995).  "The question is not whether the employer properly evaluated the competing applicants, but whether the employer's reason for choosing one candidate over the other was honest." *Id.* citing *Brill v. Lante Corp.,* 119 F.3d 1266, 1273 (7th Cir. 1997). "'Pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." *Id.* citing *Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1005 (7th Cir. 2001) (internal citations omitted). Thus, even if Ferrara's reasons for selecting Mr. Grant over Plaintiff were "mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons, pretext has not been shown." *Id.;* citing *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000).

Here, there was nothing phony or deceitful about why Ferrara chose to hire Patrick Grant for the Production Manager position. Plaintiff was objectively unqualified for the Production Manager role based on his resume – which is all Ferrara had to rely upon – and Ferrara chose not to interview him on that basis alone. Indeed, there's not a scintilla of evidence indicating that Plaintiff's prior Charge of Discrimination played any role in its decision not to interview him – and to the contrary Mr. Oppenheimer specifically instructed Mr. Kaps that it "*must not play* any part in our decision regarding his candidacy for this position or any other position." (SOF, ¶ 27) (emphasis). That is the only evidence connecting Plaintiff's prior Charges of Discrimination with his application for the Production Manager position, and such evidence cuts against pretext.

The undisputable evidence shows that Plaintiff was wholly unqualified for the Production Manager role and that – not lies or deceit – was the reason he did not get the job. No factual support (or plausible context) for Plaintiff's claims of Title VII and IHRA retaliation for failure to hire exists under any legal theory. Therefore, due to Plaintiff being able to prove that but-for his filing of Charges of Discrimination that he would be hired, summary judgment must be granted in Defendant's favor.

## **CONCLUSION**

Defendant, Ferrara Candy Company, prays this Honorable Court grant summary judgment in its favor and against Plaintiff Christopher Dubose as to his complaint at law, and further requests that this Court enter an order dismissing Plaintiff's complaint at law with prejudice.

Respectfully submitted:

FERRARA CANDY COMPANY

By: */s/ Ryan T. Benson*
    One of their attorneys
    O'HAGAN MEYER LLC

Kevin M. O'Hagan, ARDC No 6211446
Ryan T. Benson, ARDC No. 6312338
O'HAGAN MEYER LLC
One East Wacker Drive
Suite 3400
Chicago, Illinois 60601
PH:  312.422.6100
FX:  312.422.6110
kohagan@ohaganmeyer.com
rbenson@ohaganmeyer.com

19

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of January, 2024, I electronically filed *Defendant's Memorandum of Law in Support of its Motion for Summary Judgment*, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alexander N. Loftus
Davina Rae DiPaolo
Gail S. Eisenberg
LOFTUS & EISENBERG LTD.
161 N. Clark St., Suite 1600
Chicago, IL 60601
Phone: 312-899-6625
alex@loftusandeisenberg.com
Davina@LoftusandEisenberg.com
Gail@LoftusandEisenberg.com

*/s/ Ryan T. Benson*
Ryan T. Benson (ARDC No.: 6312338)
O'Hagan Meyer LLC
One E. Wacker Dr., Ste. 3400
Chicago, IL 60601
(312) 422-6100
(312) 422-6110 fax
rbenson@ohaganmeyer.com

20