**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Christopher DuBose,

 *Plaintiff,*

v.

Ferrara Candy Company,

 *Defendant.*

No. 22 CV 7147

Judge Lindsay C. Jenkins

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christopher DuBose claims that Defendant Ferrara Candy Company violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, *et seq.*, when it failed to hire him as a Production Manager. [Dkt. 1.] Ferrara moves for summary judgment, arguing that it did not hire DuBose because he was not the best candidate. [Dkt. 26.] Because DuBose has not produced enough evidence for a jury to find that this reason was a pretext for unlawful retaliation, Ferrara's motion for summary judgment is granted.

## I. Background

### A. Ferrara's Objections

Before recounting the facts, the Court addresses Ferrara's objections to Dubose's Local Rule 56.1(b)(3) statement of additional facts. The Court has already granted Ferrara's request to disregard paragraphs beyond 40 in DuBose's statement [Dkt. 44], so it will not address objections to paragraphs beyond 40.

Ferrara objects to documents relied on in paragraphs 5, 9, 10, 15, and 16 as not properly authenticated. [Dkt. 43 ¶¶ 5, 9–10, 15–16.] *See Steffek v. Client Servs., Inc.*,

1

948 F.3d 761, 769 (7th Cir. 2020) ("Documents must be authenticated by an affidavit that lays a proper foundation for their admissibility, even at the summary judgment stage." (citation omitted)). The Court gave DuBose leave to supply proper affidavits. [Dkt. 44.] *See Steffek*, 948 F.3d at 769 ("When an objection is raised, nothing stops the trial court from allowing the offering party to supplement the record to cure the defect."). DuBose has done so with respect to paragraphs 9, 10, 15, and 16, and he withdraws paragraph 5. [Dkt. 45.] Ferrara raises no further objection.

Next, Ferrara objects to statements in paragraphs 2, 7, and 8 as hearsay. [Dkt. 43 ¶¶ 2, 7–8.] *See Wash. Cnty. Water Co. v. City of Sparta*, 77 F.4th 519, 529 (7th Cir. 2023) ("[I]nadmissible hearsay evidence does not create a factual dispute at summary judgment." (citation omitted)). But most of these statements were made by Ferrara employees while DuBose was applying for a job, so they were made by an "employee on a matter within the scope of that relationship while it existed" and are not hearsay. Fed. R. Evid. 801(d)(2)(D).[1] In contrast, DuBose's statement that he said, "I'm going to get in here and work my way up and show you my skills, and I will be in a production leadership role soon" [Dkt. 43 ¶ 7], is hearsay if offered for its truth. Fed. R. Evid. 801(c)(2). That statement's only possible relevance here is for its truth,[2] so

---

[1]     One of the statements was made by an unnamed Ferrara employee. [*See* Dkt. 43 ¶ 8 (asserting that DuBose "was told" information); Dkt. 27-6 at 54–56 (broader context of those statements).] Rule 801(d)(2)(D) does not state that a party must name or otherwise identify the employee who made a statement attributable to a party opponent, and Ferrara has waived any argument along these lines by not developing it. *Williams v. DeJoy*, 88 F.4th 695, 705 (7th Cir. 2023) ("[P]erfunctory and undeveloped arguments are waived." (cleaned up)).

[2]     In theory, the statement of DuBose's intention to work his way up through the ranks at Ferrara could be relevant if it put Ferrara on notice of DuBose's interest in higher-ranking positions or had an effect on the listener. *See, e.g., United States v. Graham*, 47 F.4th 561,

the Court sustains Ferrara's objection as to DuBose's statement in paragraph 7 and overrules Ferrara's other hearsay objections.

Finally, Ferrara objects to DuBose's citation of the allegations in his Complaint to support paragraphs 11, 13, and 17 through 23. [Dkt. 43 ¶¶ 11, 13, 17–23.] Ferrara is correct that DuBose "cannot create a genuine dispute of material fact by relying on allegations; he must point to admissible evidence in the record." *Marvin v. Holcomb*, 72 F.4th 828, 833 (7th Cir. 2023) (citation omitted). However, in its Answer [Dkt. 11], Ferrara admitted some of the facts DuBose relies on in his Local Rule 56.1 statement. "It is a well-settled rule that a party is bound by what it states in its pleadings." *Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001) (cleaned up). Perhaps DuBose should have supported these facts by citing the Answer, but this technicality does not prejudice Ferrara. If its Answer admitted a fact, then that fact is fair game at summary judgment. The paragraphs of the statement of additional facts Ferrara challenges cite paragraphs 12, 13, 15, 17 through 20, and 23 through 25 of the Complaint. [Dkt. 43 ¶¶ 11, 13, 17–23.] Ferrara denied the relevant facts alleged in paragraphs 12 and 17; admitted the relevant facts in paragraphs 13, 15, 18 through 20, 23, and 24; and admitted and denied some of the relevant facts alleged in paragraph 25. [Dkt. 11 ¶¶ 12–13, 15, 17–20, 23–25.] Below, the Court takes as undisputed the facts that Ferrara admitted in its answer and does not consider facts supported only by denied allegations.

---

567 (7th Cir. 2022). But DuBose made that statement to a former Plant Manager, and no evidence shows that the statement was conveyed to anyone involved with DuBose's 2021 application for Production Manager. Thus, the statement has no relevant non-hearsay use.

## B.     Facts Properly Before the Court

The Court turns to the facts it can properly consider at summary judgment. Subject to the limitations discussed above, the Court draws on the parties' Local Rule 56.1 statements to recount the facts, which are undisputed unless otherwise noted.

As its name suggests, Ferrara Candy Company makes confections. [Dkt. 36 ¶ 3.] Its largest plant, in Bellwood, Illinois, makes fruit snacks, gummies, and hard candy and has 600–650 employees. [*Id.* ¶¶ 3–4.] In August 2019, Tabatha Johnson, a senior recruiter at Ferrara, reached out to DuBose, informing him "that Ferrara had various openings, and she thought DuBose would be a great fit for one of the roles." [Dkt. 43 ¶¶ 1–2.] DuBose and Johnson had a productive series of discussions, and DuBose applied for the position of Production Supervisor at the Bellwood Plant. [*Id.* ¶¶ 3–4.] Ferrara's website prompted DuBose to create a profile and upload a résumé; the résumé he supplied in 2019 remained on file when DuBose later applied to other positions. [*Id.* ¶ 4.][3] After DuBose's formal interview, Johnson told him "how happy the team was with his interview, and that they 'loved him,'" and she told DuBose "to

---

[3]     Because DuBose did not upload a current résumé when he applied for other positions in August 2021, the 2019 résumé suggested that he had worked continuously in the position he held at that time, when in fact DuBose had changed jobs. [Dkt. 36 ¶¶ 13, 46–47.] Ferrara characterizes the résumé as containing "false information" and asserts that it "has a pattern and practice of not hiring individuals with false resumes," so Ferrara would not have hired DuBose for this reason even if he had been qualified. [*Id.* ¶¶ 46, 56.] DuBose disputes this characterization, explaining that he was not prompted to supply a new résumé when he applied in 2021, and his résumé was accurate when he submitted it in 2019. [*Id.* ¶¶ 46–47, 56.] There is a genuine dispute as to whether DuBose's résumé contained false or merely out-of-date information, and by Ferrara's articulation of its policy, it does not hire individuals who submit "false" résumés or "lie[ ] in" their résumés. [*Id.* ¶ 56.] If Ferrara's policy was not to hire individuals with inaccurate information on their résumés, perhaps there would be no dispute about whether Ferrara's policy would apply, and a jury would need to decide whether DuBose's résumé was "false." But this dispute is immaterial because, as explained below, DuBose has failed to raise a triable issue of fact even disregarding the accuracy of his résumé.

4

'expect an offer soon.'" [Dkt. 43 ¶ 6.] The Plant Manager told DuBose that he was "overqualified" for the Production Supervisor position." [*Id.* ¶ 7.] Someone at Ferrara told DuBose that if he got the position, "he would be managing the third shift alone because of his work experience," that is, DuBose would not report to a manager during his shift. [*Id.* ¶ 8.]

As expected, on August 28, 2019, Johnson sent DuBose a conditional offer for the position of Production Supervisor for the third shift. [Dkt. 36 ¶ 11; Dkt. 43 ¶ 9.] The offer was conditioned on DuBose passing a background and reference check. [Dkt. 43 ¶ 9.] To DuBose's surprise, the background check revealed a 1994 conviction for robbery. [Dkt. 43 ¶ 10.] This was an error—DuBose had no such conviction. [*Id.*][4] DuBose emailed Johnson on September 5, 2019 to tell her about the mistake and that he would attempt to resolve it; he asked her to "let the team know that this is not me, and evidently someone used my information. I can prove I was working during the time this person was in prison." [*Id.*; *see also id.* ¶ 11 (more efforts to reach out to Johnson).] Despite these attempts to explain the error, Ferrara rescinded DuBose's offer on September 5, 2019, the same day that DuBose emailed Johnson about the background check results. [Dkt. 36 ¶ 12; Dkt. 43 ¶ 12.] The only reason Ferrara gave for its decision was DuBose's purported criminal conviction. [Dkt. 43 ¶ 12.]

DuBose's interactions with Ferrara did not end there. In April 2020, DuBose filed a charge with the Illinois Department of Human Rights ("IDHR"), alleging that Ferrara had discriminated against him on the basis of race. [Dkt. 36 ¶ 12; Dkt. 43

---

[4] DuBose sued the company that performed the background check. [Dkt. 36 ¶ 12.] That litigation is not relevant here.

¶ 13.] On September 15, 2020, the judge in the criminal case that resulted in the 1994 robbery conviction that incorrectly appeared on DuBose's background check ordered that the felony conviction record be corrected. [Dkt. 43 ¶ 14.] On October 7 and 8, 2020, DuBose's then-attorney Mark Birhanu emailed Ferrara's counsel to provide a copy of the order correcting the criminal record and expressing DuBose's continued interest in working at Ferrara. [*Id.* ¶¶ 15–16.][5] A few days later, on October 12, DuBose applied for an open Warehouse Operations Manager position; he received an automated response confirming receipt of his application but otherwise did not hear from Ferrara regarding his application. [*Id.* ¶ 18.] Also in October 2020, DuBose and Ferrara attended a fact-finding conference before the IDHR, at which DuBose reiterated that he had no felony conviction and that his record had been cleared. [*Id.* ¶ 19.] DuBose applied for a third position at Ferrara as a Packaging Operations Manager on December 2, 2020; again, he received only an automated confirmation of receipt. [*Id.* ¶ 20.] Then on January 6, 2021, DuBose filed a second charge with the IDHR, alleging that Ferrara failed to hire him for these positions in retaliation for filing a discrimination complaint; DuBose and Ferrara attended a fact-finding session related to this charge on January 15, 2021. [*Id.* ¶¶ 21–22.]

---

[5]    The Court disregards the assertion that "[d]espite Ferrara being in possession of the Order demonstrating that DuBose's criminal background check results were inaccurate, the company still never responded to DuBose's emails or calls," because the only support for this assertion is an allegation that Ferrara denied. [Dkt. 43 ¶ 17.] *See Marvin*, 72 F.4th at 833.

In August 2021, DuBose applied for the position at issue here: Production Manager at Ferrara's Bellwood Plant. [Dkt. 36 ¶ 13.][6] Many facets of this role are undisputed, including:

- It was a higher-ranking position than Production Supervisor, although the parties dispute exactly how much more responsibility it carried. [*Id.* ¶ 20.]
- It was "essentially the number two position," akin to an "assistant Plant Manager role." [*Id.* ¶ 29; *see also id.* ¶¶ 21–28 (recounting responsibilities of the Production Manager, most of which are undisputed).]
- A talent profile for the role included "operations management from a manufacturing facility with an emphasis on food, consumer packaged goods, or pharmaceuticals"; "knowledge of the machines in the factory"; and the ability to "step into the role with minimal training." [*Id.* ¶¶ 30–31; *see also* Dkt. 43 ¶¶ 33–36 (listing further required or preferred qualifications).]
- Recent job experience was especially relevant. [Dkt. 36 ¶ 37.]
- Ferrara sought someone who could potentially advance to the role of Plant Manager, and "[i]nternal hiring and promotion from within is encouraged at Ferrara." [*Id.* ¶¶ 35–36.]

The parties dispute whether other qualifications were required or merely preferred. [*See id.* ¶ 34; Dkt. 43 ¶ 36.]

Approximately 80 individuals applied for the position, including DuBose. [Dkt. 36 ¶ 38.] He did not submit a cover letter, and the 2019 résumé DuBose submitted when he applied for the Production Supervisor remained on file. [*Id.* ¶ 46.] Johnson, the recruiter who had earlier communicated with DuBose, was assigned to this position. [Dkt. 43 ¶ 24.] She was responsible for deciding whether an application should be reviewed or rejected without being reviewed; if Johnson was unsure, she sought advice from Dennis Kaps, who led Ferrara's recruiting functions. [Dkt. 36 ¶ 5; Dkt. 43 ¶¶ 25–26.] Johnson told Kaps about DuBose's application. [Dkt. 43 ¶ 27.]

---

[6]     The Court disregards the assertion that "DuBose only received an automated reply email from Ferrara, confirming receipt of the application," because the only support for this assertion is an allegation that Ferrara denied. [Dkt. 43 ¶ 23.] *See Marvin*, 72 F.4th at 833.

Kaps knew there was pending litigation between DuBose and Ferrara, but he does not recall how he became aware of it. [*Id.* ¶ 28.] Kaps reviewed DuBose's résumé and application and later testified that he "did not believe [DuBose] should have been interviewed and did not believe he was qualified for the role," while "other applicants were." [Dkt. 36 ¶¶ 48–49.][7] In light of the pending litigation, Kaps emailed Andrew Oppenheimer, Ferrara's assistant general counsel, and Jillian Donato, the vice president of HR, stating that DuBose did not meet "all of [Ferrara's] criteria" but that he did meet "some of it" and asking whether Ferrara should "definitely interview" DuBose. [*Id.* ¶¶ 50–52; Dkt. 43 ¶¶ 29–30.] Oppenheimer responded as follows:

> Mr. DuBose should be evaluated for this position as if he were any other candidate. He should be evaluated solely on whether he meets the qualifications of the job, and his experience and qualifications against other qualified candidates who are interested in this position. The fact that he filed prior Charges of Discrimination against Ferrara must not play any part in our decision making regarding his candidacy for this position or any other position.

[Dkt. 36 ¶ 53; Dkt. 43 ¶ 29.] Ferrara did not interview DuBose for the Production Manager role, and DuBose has not spoken to any Ferrara employee since 2019. [Dkt. 36 ¶ 17.] Ferrara asserts that Kaps duly evaluated DuBose like any other candidate, which DuBose disputes. [*Id.* ¶ 54.]

Ferrara interviewed five candidates for the Production Manager position, three external and two internal. [*Id.* ¶¶ 39–43; Dkt. 43 ¶ 39.] The external candidates were

---

[7] DuBose acknowledges that Kaps gave this testimony without agreeing that it is true, and he argues that the record is unclear whether Kaps had access to more information about DuBose than his résumé and application. [Dkt. 36 ¶ 49 ("Kaps worked closely with Johnson, who had worked closely with DuBose when she recruited him to apply for the position of Production Supervisor. Kaps could have accessed Johnson's knowledge and experience of DuBose's candidacy from her prior experience with him." (citation omitted)).]

Hector Alvarez, the production manager for a chicken processing plant since 2018; David Young, who had management experience at six food manufacturers but who had short tenures with other companies in the previous three years; and Alexander Lewis, who lacked food manufacturing experience but had held high-level positions at other manufacturing companies. [Dkt. 36 ¶¶ 40–42.] The internal candidates were Florron Gause, a Production Supervisor, and Patrick Grant, who had been working at Ferrara for six years and was an Inventory Supply Manager. [*Id.* ¶ 43; *see id.* ¶ 65; Dkt. 43 ¶ 40.] Ferrara hired Grant, who still holds the position. [Dkt. 36 ¶¶ 6–7, 64.] Matthew McClurken, the Plant Manager who hired Grant, does not recall being aware of DuBose's application at the time, but he reviewed DuBose's résumé and testified that he would not have interviewed DuBose, that the five candidates Ferrara interviewed were more qualified, and that he would hire Grant over DuBose if he had to make that decision today. [*Id.* ¶¶ 66–68, 71.] DuBose acknowledges this testimony but disputes its veracity; he contends that Ferrara's reason for not interviewing and hiring him was retaliation for statutorily protected activity.

DuBose filed a third charge of discrimination with the IDHR, which he also filed with the Equal Employment Opportunity Commission ("EEOC"), alleging that Ferrara failed to hire him in retaliation for his protected conduct. [Dkt. 1 ¶ 28.] He received a right-to-sue letter from the EEOC in December 2022. [*Id.* ¶ 31; *see* Dkt. 1-2.] DuBose then filed this lawsuit, raising retaliation claims for Ferrara's failure to hire DuBose as a Production Manager under Title VII and the IHRA. [Dkt. 1.] Ferrara now moves for summary judgment. [Dkt. 26.]

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). The Court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (internal quotation omitted). But the nonmovant must offer evidence, not mere speculation, to defeat summary judgment. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021).

## III.    Analysis

DuBose brings two claims for retaliatory failure to hire against Ferrara, under Title VII and the IHRA. [Dkt. 1 ¶¶ 38–47.] "To establish retaliation under Title VII," he "must show that he engaged in a statutorily protected activity, he suffered a materially adverse employment action, and there was a causal connection between the two." *Xiong v. Bd. of Regents of the Univ. of Wis. Sys.*, 62 F.4th 350, 354–55 (7th Cir. 2023) (citation omitted). Retaliation claims require but-for causation, meaning

that the adverse action would not have happened without the protected activity. *Id.* at 355 (citation omitted) (but noting that events may have multiple but-for causes).[8]

The parties share much common ground. They agree that Title VII's standards also apply to DuBose's IHRA claim, so the Court need not conduct a separate state law analysis. [Dkt. 28 at 11 n.2; Dkt. 35 at 2 n.1.] They agree that DuBose engaged in statutorily protected activity when he filed IDHR complaints. [Dkt. 28 at 20; Dkt. 35 at 3.] And they agree that Ferrara not hiring DuBose as a Production Manager is an adverse employment action under Title VII. [Dkt. 28 at 20; Dkt. 35 at 3.] *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any … applicants for employment … because he has made a charge … under this subchapter."). The parties disagree, of course, about the ultimate issue: whether a reasonable jury could find that Ferrara failed to hire DuBose in retaliation for statutorily protected activity.

---

[8]     Ferrara analyzes DuBose's claims under the "direct" and "indirect" methods of proof [*see* Dkt. 28 at 12–18], but that analytical framework does not accord with current Seventh Circuit precedent. As Ferrara notes, *Ortiz v. Werner Enterprises*, 834 F.3d 760 (7th Cir. 2016), "abrogated the distinction between direct proof and indirect proof but did not 'displace the burden-shifting analysis established in *McDonnell Douglas*,' which courts had formerly referred to as the 'indirect' method of proof." [*Id.* at 10–11 (quoting *Martin v. Wilkie*, 2019 WL 1383934, at \*2 (S.D. Ind. Mar. 27, 2019)).] Even in the absence of "direct" evidence, DuBose need not invoke the *McDonnell Douglas* framework, *Xiong*, 62 F.4th at 354, and he has not done so. [*See* Dkt. 35.] Under *Ortiz*, the question is whether all the evidence, put in a single pile, would allow a jury to find that Ferrara retaliated against DuBose in violation of Title VII. 834 F.3d at 766. That is called the "holistic" inquiry, not the "direct" approach, *see, e.g.*, *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023), and even the Court sometimes slip back into the old terminology, *see, e.g.*, *Hoffberg v. Elliot Auto Supply Co.*, 2024 WL 245186, \*9 (N.D. Ill. Jan. 23, 2024) (referring to the "direct" method, but applying what is now known as the holistic approach). The linguistic imprecision here is harmless. Both sides analyze DuBose's claims under the correct standard: whether, looking at all the evidence, a jury could find that Ferrara did not hire him because of his protected activity.

In essence, Ferrara argues that it is entitled to summary judgment because no reasonable jury could find that it failed to hire DuBose in retaliation for filing IDHR complaints; instead, Ferrara argues that DuBose was unqualified for the Production Manager role or at least that he was less qualified than Grant, whom Ferrara hired. [Dkt. 28 at 12–18.] When an employer "present[s] a non-retaliatory reason for [an] adverse [employment] action," as Ferrara has done here, "the controlling question … is whether the proffered reasons were pretext for retaliation." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 380 (7th Cir. 2020).[9] To stave off summary judgment, DuBose must show that the record "can support a determination that this reason was pretextual," *id.*,[10] meaning DuBose "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [Ferrara's] asserted reasons that a reasonable person could find it unworthy of credence. If an employer's explanation for the

---

[9]     The employer's nondiscriminatory reason for taking the adverse employment action and the plaintiff's ability to prove pretext are formal parts of the *McDonnell Douglas* analysis, *see Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023), but they are also relevant under the holistic approach, *see, e.g., Parker v. Brooks Life Sci., Inc.*, 39 F.3d 931, 937–41 (7th Cir. 2022) (analyzing pretext in an analogous Americans with Disability Act retaliation claim). *Robertson* did not expressly state whether it was applying *McDonnell Douglas*, the holistic method, or both, and it did not cite *McDonnell Douglas* or *Ortiz*.

[10]     The Seventh Circuit sometimes states that there are ways to show that an adverse employment action occurred because of protected activity besides establishing pretext. *E.g., Huff v. Buttigieg*, 42 F.4th 638, 647 (7th Cir. 2022) ("Common categories of circumstantial evidence include suspicious timing, ambiguous statements, pretext, and evidence of similarly situated employees who were treated differently." (citation omitted)). There does not appear to be a meaningful difference between "pretext" and other forms of circumstantial evidence. As *Ortiz* holds, the question is whether all evidence, put together, can support the conclusion that the employer retaliated against the plaintiff based on protected activity. If an employer offers a nonretaliatory reason, but that reason is false, it is pretextual; suspicious timing and other evidence may help a jury reach that conclusion. The Seventh Circuit seems to refer to "pretext" as a shorthand for the jury being able to find that an employer took an adverse employment action against an employee because of his protected activity, *see, e.g., Robertson*, 949 F.3d at 380, and the Court will do the same here.

challenged employment decision has been shifting or inconsistent, this may be evidence of pretext." *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 893 (7th Cir. 2024) (cleaned up). DuBose's efforts to show pretext, and therefore retaliation, fall short.

## A. Deviations from Hiring Procedures

DuBose argues that Ferrara deviated from its standard hiring procedures with respect to his applications after he filed IDHR complaints, which suggests retaliation. [Dkt. 35 at 3–5.] "Prior to engaging in any protected activity," he submits, "Ferrara viewed DuBose as a very attractive candidate; so much so that, out of the blue, *they* sought out DuBose after coming across his credentials online." [*Id.* at 4.] Johnson solicited DuBose's application for Production Supervisor in 2019; Ferrara employees gave him positive feedback after the interview; the Plant Manager described him as "overqualified"; and Ferrara made DuBose a conditional offer. [*Id.* at 4–5.] After his IDHR complaints, however, DuBose argues that Ferrara gave him the cold shoulder, not responding to his attempts to explain the background check mistake and not contacting him about his subsequent applications. [*Id.* at 5.] Failing to contact him, in DuBose's view, was a deviation from Ferrara's normal hiring practices and is evidence of unlawful retaliation. [*Id.* at 3–5.][11]

The Court disagrees. There are several flaws in DuBose's argument, which all stem from the fact that speculation is insufficient to defeat a motion for summary judgment. *See Weaver*, 3 F.4th at 934. First, as Ferrara explains, DuBose "does not

---

[11]     DuBose asserts in a single sentence that Ferrara "ignored his multiple attempts to explain the error [related to the felony conviction], in violation of the Illinois Human Rights Act's imperative that they engage in an 'interactive assessment.'" [Dkt. 35 at 5 (quoting 775 ILCS 5/2-103.1).] This undeveloped argument is waived. *See Williams*, 88 F.4th at 705.

outline … *what* Ferrara's standard hiring procedure is in relation to hiring for the Production Manager role" and "does not establish any difference in how [his] resume was treated compared to the eighty or so other candidates." [*Id.* at 4.] The fact that Johnson contacted DuBose in 2019 does not establish that such outreach was the norm. It is also possible that not soliciting prospective applicants was standard, and Johnson's reaching out to DuBose was the deviation. If so, then Ferrara's failure to reach out to DuBose about the other roles was a return to its normal procedure, not evidence of unfavorable treatment because of his IDHR complaints. DuBose's account is certainly possible, but he has no knowledge of and has offered no evidence about Ferrara's ordinary hiring procedures, nor has he spoken to any Ferrara employee since 2019. [Dkt. 36 ¶ 17.] Without evidence about Ferrara's procedures, he can only speculate about deviations, which is insufficient to create a factual dispute at summary judgment.[12]

Second, DuBose bases his argument in part on the fact that Ferrara did not contact him about the Warehouse Operations Manager and Packaging Operations Manager positions he applied for in 2020 [Dkt. 35 at 5], but he has offered no evidence that he was qualified for those roles. [*See* Dkt. 43 ¶¶ 18, 20 (asserting that he applied for these roles and received no meaningful response); *cf. id.* ¶¶ 32–36 (discussing

---

[12]    Ferrara argues that Johnson's silence "in fact underscores in part why summary judgment should be granted in favor of Ferrara." [Dkt. 42 at 5.] The Court disagrees. DuBose lacks evidence to support his affirmative argument on this point, but that doesn't change the fact that the Court cannot draw inferences in Ferrara's favor at summary judgment.

qualifications required for Production Manager).][13] Without an evidentiary basis to find that DuBose was qualified for these roles, a jury could only speculate about whether Ferrara's failure to contact him about them suggests retaliation.

Third, DuBose has offered evidence that he argues support a jury finding that he was qualified to be Production Manager [*see* Dkt. 35 at 7–10], but the question here is whether Ferrara's failure to proactively reach out to him constitutes evidence of retaliation. The former Plant Manager saw DuBose as overqualified for Production Supervisor [Dkt. 43 ¶ 7], but that does not imply that DuBose was such a strong candidate for Production Manager that Ferrara's failure to reach out was suspicious, and without evidence about when Ferrara ordinarily reaches out to applicants, a jury could do no more than speculate about why no one contacted DuBose.[14]

A reasonable jury could do no more than speculate about why Ferrara did not contact DuBose about the applications he submitted after filing complaints with the IDHR. Speculation cannot create a genuine dispute of material fact at summary

---

[13]     Paragraph 35 refers to an "Operations Manager" position, but context makes clear this is a reference to the Production Manager role. [Dkt. 43 ¶ 35; *see* Dkt. 27-2 at 50:10–:12 ("Q. And then, who was ultimately hired as the operations manager? A. Patrick Grant.").]

[14]     DuBose suggests that Kaps's awareness of the charges of discrimination DuBose had filed and the fact that he asked for advice regarding how to treat DuBose's candidacy suggest that Ferrara did not evaluate him like other candidates. [Dkt. 35 at 6–7.] The Court agrees with DuBose that the email telling Kaps to consider DuBose's application like anyone else's "is not dispositive because employees have long been taught 'not to put discriminatory beliefs or attitudes into words oral or written.'" [*Id.* at 7 (quoting *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929–30 (7th Cir. 2020)).] But the email and Kaps's awareness of the charges DuBose filed are also not evidence in the other direction. DuBose suggests that it is suspicious that Kaps knew about the litigation since he worked in talent acquisition, which may be true, but inferring an ill motive from Kaps's uncertainty about why he knew about the pending charges would be too speculative. *See Weaver*, 3 F.4th at 934. And even if a jury disregards the email because it concludes that Ferrara would have sent it regardless of whether it would retaliate against DuBose, that disbelief would mean that the record is empty on this point, and an empty record is not evidence. *See Moran v. Calumet City*, 54 F.4th 483, 494 (7th Cir. 2022).

judgment, *Weaver*, 3 F.4th at 934, so the lack of contact from Ferrara is not evidence of retaliation for engaging in statutorily protected activity.

### B.    Suspicious Timing

DuBose argues that a jury could find in his favor in part because of suspicious timing. Suspicious timing can be "[r]elevant circumstantial evidence" that can help a plaintiff prove a retaliation claim. *See Adebiyi*, 98 F.4th at 982 (citation omitted). However, "suspicious timing will rarely be sufficient in and of itself to create a triable issue" for the "obvious" reason that "suspicious timing may be just that—suspicious— and a suspicion is not enough to get past a motion for summary judgment." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (cleaned up). "For an inference of causation to be drawn solely on the basis of a suspicious-timing argument," "the time period between the protected activity and the adverse action must be very close," usually "no more than a few days ... between the protected activity and the adverse action." *Id.* at 966–67 (cleaned up) (collecting cases); *see, e.g.*, *Xiong*, 62 F.4th at 355 (holding that a jury could infer causation based suspicious timing where only one day passed between the protected activity and the termination).

The evidence of suspicious timing here is thin. The section of DuBose's brief addressing suspicious timing describes it as follows: "Prior to engaging in protected activity, Ferrara treated DuBose like a highly desired and qualified prospective employee," but after he first began making charges of discrimination, "and up until filing the instant Complaint, DuBose has been iced out by the company and has not received any communication regarding his three subsequent job applications, aside from automated email replies." [Dkt. 35 at 10–11.] This sequence of events amounts

to little more than the adverse employment action occurring later than the protected activity, which is necessary but not sufficient for a finding of suspicious timing. *Cf. Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 926 (7th Cir. 2019) ("[The plaintiff] has an insurmountable problem with timing. The negative performance feedback she received … predates any of her complaints, verbal or written.").

DuBose filed his first IDHR complaint in April 2020, six months before his next application for a job at Ferrara and 16 months before he applied to be a Production Manager. [*See* Dkt. 43 ¶¶ 13, 18, 20, 23.] The shortest interval between an instance of arguably protected activity and a job application was at least four days and might have been longer. [*See id.* ¶¶ 16–18 (October 7 and 8 emails from DuBose's counsel, application for a Warehouse Manager Position during the week of October 12).] Many of the intervals, including the one preceding the Production Manager application, were weeks or months long. [*See id.* ¶¶ 22–23 (June 15 factfinding conference, August 30 application).] While the roughly four-day interval in October 2020 might under some circumstances be short enough to be suspicious by its timing alone, *see Kidwell*, 679 F.3d at 966, Ferrara's failure to hire DuBose as a Production Manager, not a Warehouse Operations Manager, is the adverse employment action at issue here. The fact that only a few days may have passed between protected activity and Ferrara's failure to hire DuBose for that position is less suggestive of pretext than if only four days elapsed between protected activity and DuBose's application for Production Manager. The other intervals are too long to support a finding of suspicious timing without other evidence, which DuBose does not provide. *See id.*; [Dkt. 35 at 10–11.]

17

Suspicious timing alone is rarely enough to defeat summary judgment, *Kidwell*, 679 F.3d at 966, and it is not sufficient here. At best, the timing constitutes a small amount of evidence of retaliation—not enough to sustain DuBose's claim on its own, but something to add to the pile. *See Ortiz*, 834 F.3d at 766.

### C. Better Treatment of Other Prospective Employees

Next, DuBose argues that Ferrara treated other applicants better than him, which can help establish that its reasons for not hiring him were pretextual. [Dkt. 35 at 11–13.] Raising a triable issue of fact based on Ferrara's treatment of other applicants would be difficult for several reasons. First, much of the evidence DuBose relies on in support of this argument comes from statements of fact the Court has disregarded. [*See, e.g.*, *id.* at 12 (citing these facts to compare DuBose's qualifications with Lewis).] Second, DuBose was only treated worse than the five candidates whom Kaps requested Johnson interview, but not the approximately 74 applicants who were not interviewed. That is, Ferrara did not single DuBose out for poorer treatment; it treated him as it did most applicants, which hurts his argument that his treatment relative to the candidates Ferrara interviewed supports a reasonable inference of retaliation. *See McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019) (explaining that the Court "make[s] only reasonable inferences, not every conceivable one" in favor of the nonmovant) (citation omitted).[15] Third, DuBose must do more than show

---

[15]    DuBose might have been able to bolster the probative value of the fact that he was not interviewed by introducing evidence about the qualifications of other applicants who were not interviewed. For example, if a jury could find that 70 applicants were clearly unqualified, the pool of candidates he would be compared against would effectively shrink. DuBose has not offered such evidence, however.

that his qualifications were equal to or better than the candidates Kaps requested be interviewed. He must offer evidence that Kaps's belief that those applicants were superior to him was "a lie," "a phony reason." *Crain v. McDonough*, 63 F.4th 585, 593 (7th Cir. 2023) (cleaned up). DuBose fails to create a triable dispute on this issue.

DuBose argues that there are discrepancies in the requirements for Production Manager and in his qualifications relative to others that a jury must resolve. Ferrara interviewed Gause, the internal candidate it did not hire, despite Gause holding only a high school diploma, and Ferrara interviewed Lewis even though he lacked food manufacturing experience. [Dkt. 35 at 11–12.] DuBose, meanwhile, has a master's degree and, while he also lacks food manufacturing experience, had some food-related work experience. [*Id.* at 12.] DuBose notes several disputes surrounding the decision to interview Gause and Lewis, but not him:

- Whether a bachelor's degree is "required," as Galvez testified, or merely "ideal," as the talent profile stated;
- Whether Ferrara "interviewed" Gause, as McClurken testified, or had a "courtesy conversation'" with him; and
- Why Lewis received an interview, despite inferior food-related experience.

[*Id.*] Even setting aside the fact that DuBose cites facts that the Court has disregarded in support of this argument, these disputes do not establish a genuine dispute of *material* fact regarding retaliation. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009) ("A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." (citation omitted)).

The relevant question is whether Kaps's reason for not interviewing DuBose was a pretext for unlawful retaliation. Galvez's views about the qualifications needed for Production Manager do not shed light on Kaps's reasons for recommending that

Gause but not DuBose be interviewed. It is undisputed that the talent profile did not list a bachelor's degree as a requirement, McClurken and Kaps conferred about the talent profile, and McClurken agreed with the job description. [Dkt. 36 ¶¶ 30–32.] Further, it is undisputed that Ferrara encouraged internal hiring [*id.* ¶ 36], and Gause but not DuBose was an internal candidate. DuBose cites no evidence that Galvez told Kaps during the Production Manager hiring process that a college degree was required, so no reasonable jury could find based on Galvez's testimony that Kaps's stated reason for not interviewing DuBose was pretextual. As for Lewis, DuBose cites no evidence showing that Kaps knew about DuBose's food-related experience when he applied for Production Manager. [*See* Dkt. 42 at 6.][16] Thus, that experience could not have impacted Kaps's decision to interview Lewis but not DuBose, so it also does not constitute evidence of pretext. Moreover, Ferrara did not hire Gause or Lewis, so any dispute over whether DuBose was the superior candidate would not help him show that Ferrara did not *hire* him, which is the adverse employment action at issue here. DuBose has therefore failed to raise a material factual dispute based on being treated worse than others.

### D. DuBose's Qualifications

The Court turns to DuBose's argument that his qualifications can, in part, establish a triable dispute about Ferrara's reason for not hiring him. Ferrara invokes the principle that a plaintiff cannot rely on his opinion of his own qualifications to defeat summary judgment, so he cannot overcome Ferrara's nonretaliatory reason for

---

[16]     DuBose asserts that he "had more education than" Lewis, but he cites no evidence in support of that proposition. [*See* Dkt. 35 at 16; Dkt. 36, 43 (no mention of Lewis's degrees).]

hiring him. [Dkt. 28 at 14–15.] As Ferrara notes, the Seventh Circuit has explained that "a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (quotation omitted). It argues that the evidence of DuBose's qualifications amounts to no more than his personal opinion, so summary judgment is proper. [Dkt. 28 at 15–16.] DuBose responds that "the *Millbrook* rule applies only where the plaintiff relies *exclusively* on evidence of the applicants' comparative qualifications," *Joll*, 953 F.3d at 934 (cleaned up), and that he does not rely only on his opinion. [Dkt. 35 at 3–5; *see id.* at 7–10.] The Court agrees with DuBose's legal position: if he offers evidence other than his opinion about his qualifications for the Production Manager role, he might be able to establish a genuine dispute of material fact regarding Ferrara's reason for not hiring him. The evidence he offers, however, fails to raise such a dispute.

The Court has already rejected DuBose's argument about some evidence he seeks to rely on here. He argues that this "includes Ferrara's dramatic departure in how they treated DuBose prior to his protected activity, compared to their treatment of him after. A deviation from standard procedures can lend support to claims and establish pretext." [*Id.* at 4–5 (citations omitted).] But as the Court explained above, DuBose has offered no evidence about Ferrara's normal hiring process, so a jury could only speculate about whether a deviation occurred.

The evidence DuBose can rely on is the statements of Ferrara employees about his qualifications. [*Id.*] This sort of evidence does not suffer from the defects that a

plaintiff's opinion of his qualifications does. The issue in a retaliation case is "what the employer believed about the [prospective] employee's abilities," but "without proof of a lie as to what the employer believed no inference of discriminatory motive can be drawn." *Millbrook*, 280 F.3d at 1181 (cleaned up). Further, a plaintiff armed only with his own opinion cannot survive summary judgment because "his only 'evidence' [is] that defendants' witnesses [are] not worthy of belief," which "ma[kes] it a no-evidence case, and such a case a plaintiff must lose, because he has the burden of proof." *Id.* (cleaned up); *accord Moran*, 54 F.4th at 494. If different employees give conflicting statements about an applicant's qualifications, however, a jury can believe one and disbelieve the other, and depending on the content of those statements, the jury may be able to return a verdict in favor of the plaintiff. *See Joll*, 953 F.3d at 934.

DuBose offers the following evidence to support a finding that he was qualified to be a Production Manager:

- Galvez, an HR manager, described the Production Manager job as "a step up" from Production Supervisor. [Dkt. 36 ¶ 20.]
- Johnson, a Ferrara recruiter, reached out to DuBose and encouraged him to apply to the Production Supervisor position. [Dkt. 43 ¶¶ 1–3.]
- A Plant Manager described DuBose as "overqualified" for the role of Production Supervisor. [Dkt. 43 ¶ 7.]
- DuBose received a conditional offer for the third shift, during which he would not report to a manager. [*Id.* ¶¶ 8–9.]
- DuBose was competitive for roles at other candy companies. [Dkt. 36 ¶ 62.]

True, there is evidence to support Ferrara's side too. It argues that DuBose may have been qualified to be a Production Supervisor, but "the Production Manager and Production Supervisor roles are vastly different." [Dkt. 28 at 14.] It is undisputed that Production Manager is a higher-ranking position than Production Supervisor and that DuBose does not check all the boxes that Ferrara employees said were ideal for

a Production Manager. [*See, e.g.*, Dkt. 36 ¶¶ 20, 29–37.] But at summary judgment, the Court must view the evidence in the light most favorable to DuBose, and if a jury credited the evidence favorable to DuBose, it could reasonable find based on Ferrara employees' statements that he was qualified to be Production Manager.

Being qualified is not enough, however, because an employer does not violate Title VII if it hires one qualified candidate over another or misjudges and hires an inferior applicant. *See Crain*, 63 F.4th at 593 ("Pretext is not just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." (cleaned up)). This is where DuBose falters. No reasonable jury could find that Grant, whom Ferrara hired as Production Manager, was not qualified for that role. He was a six-year veteran of Ferrara prior to being promoted to Production Manager, and he had experience with candy manufacturing, which are traits that Ferrara undisputedly sought in a Production Manager. [Dkt. 36 ¶¶ 6, 30–33, 36–37, 64–65; *see also id.* ¶ 72 (no evidence that Ferrara Production Managers without food manufacturing experience).][17]

The Court has addressed the evidence DuBose presented to support a finding of pretext. That evidence includes Kaps's awareness of the pending litigation, the fact that Ferrara did not proactively reach out to him about positions other than Production Supervisor, and the fact that he was not interviewed despite being a

---

[17]     DuBose argues that Ferrara's failure to produce Grant's résumé in discovery—which it asserts was based on a malware attack—is suspicious because if it were true, Ferrara would have noted the attack in proceedings before the IDHR. [*See* Dkt. 35 at 13–14.] The Court has disregarded the evidence DuBose relies on in support of this argument, however, because of his failure to comply with Local Rule 56.1. [Dkt. 44.]

potentially viable candidate for Production Manager. For the reasons the Court stated above, this scant evidence is insufficient to support a *reasonable* inference that Kaps did not request DuBose be interviewed in retaliation for his protected activity. *See McCarty*, 927 F.3d at 471. Therefore, despite DuBose's introduction of evidence about his qualifications for Production Manager beyond his own opinion, he has failed to raise a genuine dispute of material fact as to whether Ferrara's failure to hire him was retaliation for his protected activity. Even putting all DuBose's evidence in a pile, *see Ortiz*, 834 F.3d at 766, no reasonable jury could find in his favor. Ferrara is entitled to summary judgment on DuBose's Title VII and IHRA retaliation claims.

## IV.    Conclusion

For the foregoing reasons, Ferrara's motion for summary judgment [Dkt. 26] is granted. Judgment shall enter in favor of Ferrara and against DuBose. Civil case terminated.

Enter: 22-cv-7417
Date:  May 9, 2024

_____
Lindsay C. Jenkins
United States District Judge